## WESTERN AND ATLANTIC RAILROAD CO. *v.* BRANAN.

1. To properly bring under review the correctness of a ruling as to the admissibility of evidence which a trial judge declines to exclude, the complaining party must make it appear not only that the evidence was admitted over his objection, but also what grounds of objection he urged at the time the evidence was offered.

2. In an action to recover damages of a warehouseman because of an alleged failure on his part to comply with the duties imposed upon him by law with respect to the proper storage and care of goods entrusted to his care, the plaintiff must recover, if at all, upon proof of the specific acts of negligence which he sets forth in his pleadings, and the trial judge should not, in his charge to the jury, give the plaintiff the benefit of any theory of recovery not covered by the allegations of his petition.

3. If the plaintiff fails to sustain by evidence a charge of negligence made against the defendant, the judge should eliminate this feature of the case when instructing the jury as to the issues upon which they are called to pass, and not leave them to determine whether the defendant was negligent in the respect alleged but not proved.

4. In so far as the written requests to charge, presented by the defendant in this case, were pertinent and in accord with the law controlling the questions at issue, they were substantially covered by the charge which the judge gave of his own motion.

Argued June 22, — Decided August 3, 1905.

Action for damages. Before Judge Reid. City court of Atlanta. September 24, 1904.

In the latter part of the year 1899, Charles I. Branan entered into an arrangement with the Western and Atlantic Railroad Company, whereby it was to transport over its line of railway a quantity of dried fruit which he had purchased in California, and, upon the arrival of the fruit in Atlanta, to store the same for a few months in a warehouse it had leased in what was known as the Austell building. During the month of October, five carloads of dried peaches were transported to Atlanta and stored in the company's warehouse, wherein the fruit remained till the spring of 1900. In the latter part of February, Branan went to the warehouse to get samples of the peaches, with the view to placing the fruit on sale in the market. He found the fruit damaged, some of it being dried up and shriveled, and part of it "gummy" and caked together. Between March and June so much of the fruit as was marketable was sold, the price received being far below that which it would have brought if in first-class condition. To recover the loss sustained by reason of the de-

terioration in the quality of the peaches, Branan brought suit against the railway company, basing his right of recovery upon the following allegations of fact: As an inducement to the plaintiff to have the fruit transported over its line of railway, the company represented that it could store the fruit in Atlanta, where it had ample, safe, and proper warehouse facilities. Upon the arrival of the fruit, it was examined by the plaintiff and found to be in a good and merchantable condition and without defect. The warehouse in which the company stored the peaches was not a suitable place for the storage of fruit, in that it was situated in an office building, directly over the engine-room, in which a high degree of heat was maintained, the temperature being sometimes as high as 114 degrees. As a result of this excessive heat maintained in the basement, which was communicated to and through the floor of the wareroom at the place where the peaches were stored, they were heated and cooked and caused to sweat and expand. Large pipes, used in conveying heat to the upper floors of this office building, ran through the wareroom and along its walls, increasing the temperature of heat caused by the fires maintained in the basement, and rendering the storeroom an improper and unsafe wareroom for the storage of dried fruit. The peaches, which were packed in sacks, were negligently piled in great masses, sack upon sack, without any opportunity for the air to penetrate them; and the peaches in the sacks lying on top of the piles were dried almost to a crisp, while the peaches in the sacks placed on the inside and in the middle of these piles seemed to be melted and run together in cakes and in lumps. To in this manner store the fruit was especially negligent in view of the excessive heat maintained in the storeroom. The defendant was aware of the character of the storeroom and knew of the heating apparatus which rendered it a dangerous and unsafe wareroom for the storage of fruit, whereas the plaintiff was ignorant of the surrounding conditions. The company, after holding itself out as a warehouseman having a place reasonably well suited for the storage of such fruit, negligently failed to furnish a proper storeroom, and placed the fruit in a wareroom which was unsafe and ruinous to the fruit. The damage to it would not have resulted but for the superheated condition of the warehouse, for otherwise it would have kept fresh and sound; and the defendant company

was negligent in storing the fruit there, and, after receiving it, should either have kept the wareroom at a proper temperature or have notified plaintiff of the probable damage, which it failed and neglected to do. The loss he sustained by reason of the neg-- ligence aforesaid amounted to the sum of $7,578.73, and resulted. from the lack of ordinary care on the part of the defendant com-- pany in handling the peaches stored with it.

The jury returned a verdict in favor of the plaintiff for the sum of $3,629.74. The company made a motion for a new trial, which was overruled and it excepted.

*Payne & Tye*, for plaintiff in error.

*Mayson, Hill & McGill*, contra.

EVANS, J. (After stating the facts.)   1. Error is assigned upon the admission in evidence, over the defendant's objection, of certain receipts issued to the plaintiff by the defendant company as a warehouseman, and also five " expense bills " issued to him by the Nashville, Chattanooga & St. Louis Railway, showing the weight of the peaches. What objection was urged against the introduction of this evidence at the time it was offered does not appear, and for this reason the assignment of error can not be considered. *Powell* v. *Railway Co.*, 121 *Ga.* 803.

2. Exception is taken to a charge of the court in which the judge submitted to the jury, as one of the contentions of the plaintiff, the question whether or not the company was negligent in failing " to admit air into the warehouse, in view of its heated condition, in a proper way and at proper times and periods." The complaint made of this charge is that there was no allega- tion in the petition upon which the same could be predicated; the plaintiff did not in point of fact so contend, and the charge presented to the jury an additional ground of negligence in no way claimed by the plaintiff himself. The assignment of error upon this instruction is well taken. The allegations of negligence upon which the plaintiff based his right of recovery were, (1) that the company undertook to store his peaches in a wareroom which it knew was not suitable, because of the heat generated in the basement below and communicated to and through the ware- house; and (2) that the peaches were piled in huge masses, sack upon sack, so that the air could not penetrate them. The plain- tiff confined himself to an effort to prove the first of these two

charges of negligence, by showing that the wareroom was so situated, relatively to the engine-room, that a man of ordinary care and observation should have known that the excessive heat generated in the basement rendered the wareroom an improper place for the storage of dried fruit, inasmuch as the high temperature would inevitably cause the peaches to be heated and cooked on the outer surfaces of the piles, and to sweat and expand in the middle of the piles, where the air did not circulate. The evidence disclosed, incidentally, that there were doors and numerous windows upon two sides of the wareroom; but no attempt was made to show whether the company did or did not use the means at its command to ventilate the warehouse, nor was there any testimony to warrant the conclusion that, had proper precautions in this respect been taken, the temperature therein could have been regulated and reduced to a normal degree of heat, notwithstanding its alleged ill-chosen location and want of adaptability to the use to which it was put. The instruction complained of gave to the plaintiff the benefit of a theory which he did not plead nor undertake to prove. As to whether the heat generated in the basement of the building was such as to make the wareroom an unsafe and unsuitable place for the storage of hay, grain, dried fruit, and other commodities which would suffer injury if subjected to an excessive temperature, the testimony was painfully conflicting; and the jury may have found that, whatever might be the truth in this regard, the company had not shown any effort to obviate loss to its patrons by at least attempting to maintain a normal temperature in the wareroom by. means at its command to insure proper ventilation.

3. The presiding judge also submitted to the jury the question whether or not the defendant company " was further negligent in the manner in which it stored the peaches, in that they were piled in great masses, sacks upon sacks, without any opportunity for the air to penetrate them." As is pointed out by counsel for the plaintiff in error, there was no evidence to sustain the charge of negligence made against the company with reference to the manner in which the sacks of peaches were piled. The testimony showed that the peaches were piled in the usual way, and several of the plaintiff's witnesses, who professed to be experts on the subject of handling dried fruits, expressed the opinion that peaches so

piled in bulk would keep better than they would if the sacks were kept apart and the air permitted to circulate freely among them, as when so stored the peaches would dry out and lose in weight. The plaintiff himself testified that there was no particular way for storing peaches of this kind; that the fruit would keep either way, and in his opinion the manner of piling had very little to do with the matter, though when piled in rows the sacks would absorb the moisture in the air and the fruit would be pliable and more saleable. He did not pretend that the manner in which his peaches were piled caused any injury to them, but attributed their unmarketable condition solely to the high temperature which he claimed was produced in the warehouse because of the heat maintained in the engine-room, immediately above which the major portion of the peaches were stored.

4. The court was requested by the defendant's counsel to charge the jury: "If you believe from the evidence that the peaches stored by the plaintiff in the warehouse were injured by reason of the steam pipes running through and on the walls of said warehouse, but that said pipes were there at the time the plaintiff was storing his fruit, and if you further believe the condition of the pipes was perfectly apparent and entirely manifest to any one visiting said warehouse, then I charge you that the plaintiff is presumed in law to have acquiesced in such condition of affairs and is bound by all the consequences naturally flowing from the ordinary use of these steam pipes." The court properly declined to give this request to charge. It was framed on the theory that the proposition therein stated would be true independently of whether Branan had ever visited the warehouse or had any opportunity to note surrounding conditions. He certainly could not be presumed to have acquiesced in the condition of affairs unless he either knew or had an opportunity to know of the presence of these pipes and the use to which they were put. Whether his opportunities for becoming acquainted with the premises were such as to charge him with notice that the pipes rendered the wareroom an unsuitable place for the storage of his fruit was peculiarly a question for the jury to determine. Furthermore, the request to charge ignored the plaintiff's contention that the excessive temperature was caused principally by the undue heating of the floor of the wareroom by the fires maintained

in the engine-room directly underneath, and assumed that the damage to the fruit was caused solely by the heat given off by the steam pipes which passed through the storeroom. The evidence did not support any such theory of the case. The testimony introduced by the plaintiff was to the effect that the damage to the peaches was caused principally by piling them on the superheated floor directly above the engine-room, and that the steam pipes were only a minor cause of the damage, inasmuch as the heat they gave off increased the temperature in an appreciable degree. That they of themselves were sufficient to produce the damage and to put the plaintiff on notice that the warehouse was not adapted to the storage of dried fruits does not appear, and the jury would not have been justified in so finding.

The court also declined to give in charge two other written requests presented by the defendant, one to the effect that a warehouseman is not an insurer; and the other embracing an instruction that if the loss in the sale of the peaches was due, not to any depreciation in quality, but to the fact that Branan had purchased peaches in such large quantities as to glut the market and cause a decline in the price of dried fruits, then the company could not be held accountable for such loss. These requests were substantially covered by the charge of the court.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*